TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
BRENT A. WHITTLESEY (Cal. Bar No. 73493)
Assistant United States Attorney
Asset Forfeiture Section
     Federal Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5421
     Facsimile: (213) 894-0142
     E-mail: Brent.Whittlesey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>        v.<br><br>$100,000.00 IN U.S. CURRENCY,<br><br>            Defendant. | No. 2:21-CV-03336<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>21 U.S.C. § 881(a)(6) and<br>18 U.S.C. § 981(a)(1)(A)<br><br>[DEA] |

   Plaintiff United States of America brings this claim against defendant $100,000.00 In U.S. Currency, and alleges as follows:

### JURISDICTION AND VENUE

   1.   This is an <u>in rem</u> civil forfeiture action brought pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C § 981(a)(1)(A).

2. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $100,000.00 In U.S. Currency ("defendant currency") seized from Heng Zhao ("Zhao") on October 21, 2020 outside of the Bank of the West located at 587 E. Colorado Blvd, Pasadena, California ("Bank of the West location" or "bank") by law enforcement officers during an ongoing investigation into illegal money transmitting to facilitate money laundering from drug trafficking organizations ("DTO").

6. The defendant currency is currently in the custody of the United States Marshals Service in this district, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Zhao and Lai Tso ("Tso") may be adversely affected by these proceedings.

## FACTS SUPPORTING FORFEITURE

Investigation Background

8. Beginning in February 2019, the Drug Enforcement Administration ("DEA") San Diego Field Division, OCDETF Strike Force Group Three, were investigating a sophisticated money laundering scheme utilizing the collection and sales of narcotics proceeds within the United States to citizens of the People's Republic of China ("PRC").

9. In order to reduce capital outflows, the PRC has adopted regulations making it illegal for holders of bank accounts in the PRC ("PRC Accountholders") to transfer more than $50,000 per person each year to banks outside the PRC. Many PRC Accountholders in the United States avoid the PRC's currency control regulations by exchanging money in the PRC for currency in the United States.

10. In connection with such transactions, money launderers in the United States advertise the availability of U.S. currency for sale to PRC Accountholders. Money launderers in the United States deliver U.S. currency (generally narcotics sale proceeds) to PRC Accountholders in the United States. Following receipt of the U.S. currency, the PRC Accountholder then makes an intra-bank transfer of Chinese funds from their account in the PRC to an account in the PRC designated by the money launderer and held by a DTO.

11. The effect of the transaction is to provide U.S. currency to the PRC Accountholder in the United States, and to reduce the PRC Accountholder's balance in their bank account in the PRC.

12. The DTOs subsequently utilize these Chinese bank accounts to pay Chinese export manufactures for durable goods exported from China to Mexico in a trade-based money laundering scheme.

13. The money launderers find PRC Accountholders in the United States to purchase drug proceeds by posting advertisements in Chinese language internet bulletin boards and private WeChat[1] forums.

14. On July 25, 2019, a DEA undercover agent ("UC1") negotiated with an individual using the WeChat handle "YunFei-ZH" to buy bulk U.S currency in exchange for an intra-China bank transfer.

---

[1] WeChat is a Chinese multi-purpose messaging, social media and mobile payment application.

15. During this interaction, the DEA identified the individual as Zhao by matching Zhao's California driver's license photo with the photo Zhao posted on the WeChat profile.

16. Ultimately, the transaction did not occur between UC1 and Zhao due to Zhao's inability to deliver bulk U.S. currency during the time frame of the negotiations.

17. On October 16, 2020, a DEA undercover agent ("UC2") was in communication with Zhao, utilizing the same WeChat account as the prior communication with UC1, seeking to sell bulk U.S. currency in exchange for an intra-China bank transfer.

18. Both UC1 and UC2 discovered Zhao on private WeChat forums where unlicensed money exchange propositions are advertised to PRC Accountholders in the United States.

19. UC2 described himself to Zhao as a San Diego, California resident who would purchase bulk U.S. currency in exchange for an intra-China bank transfer.

20. Zhao provided a cell phone number ending in 9728 to UC2 during the negotiations which was confirmed as a cell phone belonging to Zhao.

21. Zhao agreed to sell $100,000 to UC2 in Pasadena, California on October 21, 2020.

22. Initially, Zhao asked UC2 if the transaction could be conducted at Zhao's residence in Temple City, California[2] but ultimately, Zhao agreed to meet at the Bank of the West location on October 21, 2020 at approximately 10:00 a.m.

---

[2] Pursuant to Local Rule 5.2-1, the residence address has been omitted from this Complaint.

4

Seizure outside the Bank of the West

23. On October 21, 2020, officers surveilled Zhao from the time Zhao left his residence in Temple City, California, driving a black Lexus with California license plate number 8GNT91 ("Lexus"), registered to Zhao, to the Bank of the West location where Zhao parked on the street in front of the bank and exited the Lexus onto the sidewalk. Tso was a passenger in the Lexus.

24. UC2 had given Zhao the description of the vehicle UC2 would be arriving in to the bank, describing it as a gray Dodge Caravan ("Caravan"). When UC2 arrived at the bank driving the gray Dodge Caravan, Zhao waved at the driver believing the driver to be the person Zhao was supposed to conduct the exchange of U.S. currency with.

25. Zhao and Tso were detained (not handcuffed) by officers wearing vests that identified the officers as police. Tso was in possession of a white plastic bag containing the defendant currency.

26. The defendant currency was in small stacks rubber banded together or banded in bank bands. A couple of the smaller stacks were then rubber banded into larger stacks. This method of packaging of currency is consistent with the practices of narcotics currency couriers.

Zhao Interview

27. Zhao was advised by officers that Zhao was not under arrest but was being detained due to the illegal money transmitting business investigation.

28. Zhao stated there was not anything illegal in the Lexus but paused when asked about guns or drugs being in the Lexus. Zhao replied, "No drugs."

29. Zhao stated there was $100,000 inside the Lexus and that the money was given to Zhao from his parents in China to buy a house. Zhao gave officers consent to search the Lexus.

30. Officers asked Zhao if this was the first time Zhao tried to conduct a money exchange. Zhao responded that he was not trying to conduct an unlicensed money exchange, and Zhao had the money because he was trying to buy a house.

31. Zhao further claimed he was at the Bank of the West looking for a bank to deposit the money. However, Zhao also stated that he did not intend to deposit the money at Bank of the West.

32. Zhao was advised at this time that the officers knew Zhao was lying, and the person Zhao had been in contact with over the last several days on WeChat regarding the unlicensed money exchange was an undercover officer.

33. Zhao admitted that he knew the unlicensed money exchange was illegal.

34. Officers advised Zhao they knew this was not the first time he had been involved in an unlicensed money exchange and asked Zhao how many times Zhao had been involved in an unlicensed money exchange. Zhao was hesitant to answer and stated that it was "my friend's money too, I can't," as if Zhao was afraid to tell the officer the truth about the money and who the money was coming from.

35. After Zhao told officers that this was the first time he had exchanged currency, officers confronted Zhao with their knowledge that in 2019 Zhao tried to conduct an unlicensed money exchange with a different undercover officer.

36. Officers asked Zhao to unlock his cell phone so they could determine whether the cell phone contained texts or pictures

6

regarding unlicensed money exchanges. Zhao refused to unlock the phone.

37. When officers inquired further regarding Zhao's "friend," Zhao stated there was no friend.

38. Officers asked Zhao if he had a license from the State of California or the Department of Treasury to operate as a money transmitting service business, to which Zhao replied, "No."

39. During the search of the Lexus, officers discovered a loaded Del-ton Echo 316 rifle ("firearm") in the rear passenger seat floorboard that was loaded with one round in the chamber and had the safety off. The firearm was not in a locked case and did not have a locking mechanism on the trigger. The firearm was registered to Zhao.

40. Zhao claimed he had the firearm to protect Tso because he was going to do the unlicensed money exchange with a stranger.

41. Zhao stated that he had not yet received the account in China the money was to be transferred to, and Zhao said that he had not talked to "them" yet, referring to Zhao's Chinese friends. This is consistent with unlicensed money exchanges, in which a U.S.-based money launderer generally contacts the actual owner of the defendant currency by telephone after the delivery of the U.S. currency and receives the number of the bank account in the PRC that is to receive the intra-China transfer of funds.

42. Zhao stated that he was currently unemployed and made about $40,000 in 2019.

43. Zhao was arrested for carrying the loaded firearm in public.

7

<u>Tso interview</u>

44. Tso stated Zhao was a friend and that Tso has been staying at Zhao's residence for about three months.

45. Tso stated they (Tso and Zhao) came to the bank for Zhao to do a money exchange.

46. Tso did not know where the defendant currency came from and it did not belong to her.

47. Tso stated Zhao brought the firearm in case the person doing the exchange attempted to rob Zhao.

48. Tso did not know how many times Zhao had done unlicensed money exchanges.

49. Tso believed the defendant currency belonged to one of Zhao's friends.

<u>Canine Alert</u>

50. The defendant currency was brought to the Pasadena Police Department ("PPD") where K-9 Chase, a trained narcotics detection canine, conducted a sniff test of the currency.

51. Chase is trained to detect the odor of methamphetamine, cocaine, heroin, and their derivatives. Chase was certified on June 21, 2017, has over 400 hours of narcotics detection training, has assisted the PPD in the recovery of approximately 800 pounds of narcotics, and over $4.5 million in narcotics proceeds. When Chase detects the odor of narcotics, he alerts by doing one of a combination of staring, scratching, and pointing at the odor with his nose. When first brought into the office, Chase did not alert to the odor of narcotics. Chase was then removed from the office. An officer (not Chase's handler) hid the defendant currency in the office. Chase was then brought back into the office and commanded to

conduct a sniff by his handler. Chase "pointed" to a bag that was behind the trash can, alerting to the odor of narcotics. Chase's handler retrieved the bag and opened it to find the defendant currency.

Zhao's Narcotics Involvement

52. On October 26, 2020, DEA received notification that Zhao's cell phone number was in contact with a cell phone number ending in 0360 which was carried by Bangkai Lin ("Lin"). Lin was contacted by the DEA at the Jacksonville, Florida International Airport on October 13, 2020, and $244,000 in suspected drug proceeds were seized from Lin by the DEA. Lin is a resident of Baldwin Park, California. Lin is suspected of being a narcotics proceeds courier transporting narcotics proceeds from Jacksonville, Florida back to Southern California where the proceeds would be sold to PRC Accountholders.

53. On October 22, 2020, a State of California search warrant was issued for Zhao's cell phone.

54. On November 2, 2020, after accessing Zhao's cell phone, officers discovered photographic and communications evidence that Zhao was involved in a large scale cultivation and sales of marijuana. This evidence included photographs of large scale marijuana growing operations, and photographs of numerous parcels with address labels showing the parcels were mailed to addresses in New York, Florida and Alabama. Zhao's phone also contained a photograph of an automobile insurance policy naming Lin as the insured, further confirming Zhao's relationship to Lin.

<u>FIRST CLAIM FOR RELIEF</u>

55. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 <u>et</u> <u>seq.</u> The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

<u>SECOND CLAIM FOR RELIEF</u>

56. Based on the above, plaintiff alleges that the defendant currency constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960 or property traceable to such property. The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

    (d)   for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED: April 19, 2021

```
TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Division


  /s/ Brent A. Whittlesey
BRENT A. WHITTLESEY
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA
```

<u>VERIFICATION</u>

I, Darron D. Lee, hereby declare that:

1. I am a Special Agent with the Drug Enforcement Administration.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed _____, 2021 in Los Angeles, California.

_____
DARRON D. LEE
Special Agent
Drug Enforcement Administration